[683 NYS2d 243]

In the Matter of ARTHUR J. GALLANCY (Admitted as ARTHUR JAMES GALLANCY), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 12, 1999

### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Arthur J. Gallancy,* respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Respondent, Arthur J. Gallancy, was admitted as an attorney and counselor-at-law in the State of New York by the Appellate Division, First Judicial Department, on February 14, 1972.

At all times prior to April 11, 1996, respondent maintained an office for the practice of law within this Department.

By order and decision entered on April 11, 1996 (*see, Matter of Gallancy*, 219 AD2d 298), respondent was indefinitely suspended from the practice of law based upon uncontested evidence that respondent had engaged in professional misconduct that immediately threatened the public. Respondent has remained suspended.

In June 1996, respondent was served with charges alleging that he was guilty of professional misconduct in connection with his legal client, M. Najib Bennani. Count 1 charged respondent with violating Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3) by misappropriating Bennani's funds and by failing to repay him. Similarly, Count 2 charged respondent with violating DR 1-102 (A) (4) by repeatedly misleading Bennani and the Committee regarding his intention to fully repay Bennani. Count 3 charged respondent with violating DR 1-102 (A) (5) by his failure to comply with the order of suspension. Count 4 charged respondent with failing to preserve the identity of client funds, in violation of DR 9-102 (B) (22 NYCRR 1200.46). Count 5 charged respondent with violating DR 9-102 (C) (4) by failing to promptly pay Bennani the funds which Bennani was entitled to receive. Finally, Count 6 charged respondent with conduct which adversely reflected upon his fitness to practice law, in violation of DR 1-102 (A) (8).

Respondent answered, admitting most of the underlying facts of the charges but denying that he had intentionally converted Bennani's funds, or that he had intentionally misled either Bennani or the Committee. After a hearing, the Hearing Panel dismissed Counts 1 and 2 and sustained Counts 3, 4, 5 and 6. As stated in the Panel's report, respondent represented Bennani in 1995 in connection with the sale of Bennani's restaurant. On June 2, 1995, respondent deposited $59,000 in his Chase Manhattan Bank account, which was designated "Kaufman & Gallancy Escrow Account," representing the proceeds from the sale of Bennani's restaurant, and raised the balance in the escrow account to $145,281.25. On June 5, 1995, respondent paid Bennani $20,000, leaving $39,000 owed to Bennani. However, on June 5 and 6, 1995, respondent depleted his escrow account to $136.01 by making disbursements to another client, Investment America, and to other persons unrelated to Bennani. The report noted that respondent's conversion of Bennani's money was unintentional. Respondent had

incorrectly assumed that a check of $72,000 deposited in the escrow account on behalf of Investment America had cleared, when in fact the check was returned on June 5, 1995 for insufficient funds.

From June 1995 until respondent's suspension in April 1996, he repeatedly advised Bennani and the Committee that repayment by Investment America to Bennani was forthcoming. As of the date of the hearing, Bennani had been repaid the sum of $17,500, $14,500 from respondent and $3,000 from Investment America. After the hearing, the Lawyers' Fund for Client Protection paid Bennani the balance of $21,500 due him. The report noted that as of the date of the hearing, respondent had not filed an affidavit of compliance in accordance with 22 NYCRR 603.13.

As noted above, the Hearing Panel sustained Counts 3 through 6. These four counts of misconduct were conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) [Count 3]; failing to preserve the identity of a client's funds in violation of DR 9-102 (B) [Count 4]; failing to promptly pay a client funds in his possession, in violation of DR 9-102 (C) (4) [Count 5]; and conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (A) (8) [Count 6].

The report noted respondent's lack of any prior discipline and his apparent lack of bad faith. However, the report also noted respondent's reckless assurances to Bennani and the Committee that Bennani would be paid imminently and his failure fully to comply with the order of suspension. Accordingly, there was a recommendation that respondent be suspended for one year retroactive to April 11, 1996, and that he be automatically reinstated upon submitting proof of compliance with the Court's order of suspension and proof that he has repaid the Lawyers' Fund for Client Protection the amount which the Fund has disbursed to Mr. Bennani.

The motion by the Departmental Disciplinary Committee for an order pursuant to 22 NYCRR 603.4 (d) confirming the Hearing Panel's report and recommendation suspending respondent for one year nunc pro tunc to April 11, 1996 should be granted since the findings and conclusions of the Hearing Panel are supported by the evidence. The Hearing Panel's recommendation that respondent be reinstated only upon proof that he has reimbursed the Lawyers' Fund for Client Protection for the $21,500 balance it paid to Bennani should be disaffirmed solely to direct that respondent be reinstated upon submission of

proof of compliance with the Court's suspension order and proof that he has repaid the Lawyers' Fund for Client Protection the amount the Fund has disbursed to Mr. Bennani or, in the alternative, proof that he has entered into a satisfactory arrangement with the Lawyers' Fund to make such restitution.

ELLERIN, J. P., NARDELLI, WILLIAMS, WALLACH and TOM, JJ., concur.

Petition granted, the Hearing Panel's report and recommendation that respondent be suspended for one year nunc pro tunc to April 11, 1996 are confirmed, the recommendation that respondent be automatically reinstated upon proof that he has reimbursed the Lawyers' Fund for Client Protection disaffirmed solely to the extent of directing that respondent be reinstated upon submission of proof that (1) he has repaid the Lawyers' Fund for Client Protection the amount the Fund has disbursed to the client or, in the alternative, that he has entered into a satisfactory arrangement within the Lawyers' Fund to make such restitution, and (2) that he has complied with the order of suspension.